**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ADVANCED DYNAMIC INTERFACES,
LLC,

        Plaintiff,

   v.

MICROSOFT CORPORATION,

        Defendant.

Civil Action No.: 14-906-GMS

<u>**OPENING BRIEF IN SUPPORT OF
MICROSOFT'S MOTION TO TRANSFER VENUE**</u>

# Table of Contents

**Page**

Table of Authorities .................................................................................................iii

Nature and Stage of the Proceedings ........................................................................ 1

Summary of Argument ............................................................................................... 1

Facts   ......................................................................................................................... 2

    A.    ADI Is a Texas Company with No Connection to Delaware............................ 2

    B.    Microsoft Is a Leading Developer of Database and User Interface
    Technology ...................................................................................................... 2

    C.    Washington Is Microsoft's Principal Software Design and Development
    Location ........................................................................................................... 3

    D.    Washington Is Home to the Vast Majority of the Important Witnesses
    and Evidence for This Case ............................................................................. 4

Argument ................................................................................................................... 5

**I.**    **ADI'S CASE AGAINST MICROSOFT COULD HAVE BEEN BROUGHT IN THE
WESTERN DISTRICT OF WASHINGTON** ......................................................... 5

**II.**    **THE BALANCE OF FACTORS WEIGHS IN FAVOR OF TRANSFERRING THIS CASE
TO THE WESTERN DISTRICT OF WASHINGTON** ............................................ 6

    A.    The Private Interests Favor Transfer to Washington ........................................ 7

        1.    Factor 1—ADI has no connection to Delaware .................................... 7

        2.    Factor 2—Washington is home to Microsoft's software
        technology design and development ...................................................... 7

        3.    Factor 3—The underlying dispute arose primarily in
        Washington, not in Delaware ................................................................ 8

        4.    Factor 4—Party convenience favors Washington over Delaware .......... 8

        5.    Factor 5—Witness convenience favors Washington over
        Delaware ............................................................................................... 9

        6.    Factor 6—The books and records are located in Washington .............. 11

    B.    The Public Interests Favor Transfer to Washington ....................................... 11

        1.    Factor 7 is neutral ............................................................................... 11

        2.    Factor 8—Practical considerations of trial ease, expense and
        expedition favor Washington .............................................................. 11

        3.    Factor 9—Relative administrative difficulty resulting from court
        congestion favors transfer .................................................................. 13

**Table of Contents**
**(continued)**

4.    Factor 10—Compared to Delaware, Washington has a local interest in the underlying dispute ........................................................... 14

5.    Factors 11 and 12 are neutral ............................................................ 15

Conclusion ..................................................................................................................... 15

# Table of Authorities

**CASES**

*Boram Pharm. Co. v. Life Techs. Corp.*,
  No. CIV.A. 10-31, 2010 WL 2802727 (D. Del. July 14, 2010) ..............................................10

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
  No. CIV.A. 11-1050-GMS, 2013 WL 828220 (D. Del. Mar. 6, 2013) ...................................11

*In re Acer America Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010)...........................................................................................8

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)...........................................................................................11

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)...........................................................................................14

*In re Link_A_Media Devices Corp.*,
  662 F.3d 1221 (Fed. Cir. 2011)...................................................................................6, 7, 11

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009)...........................................................................................9

*In re Zimmer Holdings, Inc.*,
  609 F.3d 1378 (Fed. Cir. 2010)...........................................................................................12

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd*,
  797 F. Supp. 2d 472 (D. Del. 2011)...................................................................................15

*Ithaca Ventures k.s. v. Nintendo of America Inc.*,
  C.A. No. 13-824-GMS, 2014 WL 4829027 (D. Del. Sept. 25, 2014) ..............................7, 8, 9

*Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*,
  No. 12-CV-1479 (GMS), 2013 WL 4496644 (D. Del. Aug. 21, 2013)...................................9

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)...........................................................................................5, 6

*Pennwalt Corp. v. Purex Indus., Inc.*,
  659 F. Supp. 287 (D. Del. 1986)...........................................................................................7

*Signal Tech, LLC v. Analog Devices, Inc.*,
  No. CIV-A 11-1073-RGA, 2012 WL 1134723 (D. Del. Apr. 3, 2012)..............................7, 10

*Smart Audio Techs., LLC v. Apple, Inc.*,
   910 F. Supp. 2d 718 (D. Del. 2012)...................................................................5, 8, 11

*Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*,
   676 F. Supp. 2d 321 (D. Del. 2009)...................................................................6, 10, 11

*Wacoh Co. v. Kionix Inc.*,
   845 F. Supp. 2d 597 (D. Del. 2012)...................................................................5, 7, 8, 10

**STATUTES**

28 U.S.C. §§ 1391 & 1400(b) ...............................................................................5

28 U.S.C. § 1404(a) ...............................................................................................1, 5

**OTHER AUTHORITIES**

Federal Court Management Statistics, U.S. COURTS (June
   2014), http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/
   district-courts-june-2014.aspx] ..........................................................................13

## Nature and Stage of the Proceedings

On July 10, 2014, Advanced Dynamic Interfaces, LLC ("ADI") sued Microsoft Corporation ("Microsoft") for alleged infringement of U.S. Patents Nos. 7,062,502 and 7,401,094 (the "'502 and '094 patents"). The case remains at an early stage, with discovery only just beginning and with the Court having yet to address the merits of the parties' claims and defenses. For the convenience of the parties and witnesses and in the interest of justice, Microsoft seeks a transfer of venue to the Western District of Washington so that the record can be developed and the case resolved or tried in the most efficient location possible.

## Summary of Argument

28 U.S.C. § 1404(a) gives a district court discretion to transfer venue when the facts demonstrate that litigating in another district would increase the overall convenience to the parties and witnesses and would serve the interests of justice. Here, Delaware is not convenient for either party, and the Western District of Washington is significantly more convenient for Microsoft. The asserted patents are directed to software for generating database user interfaces. Microsoft's headquarters and its principal software design and development location for the relevant features in the accused products is Redmond, Washington. Many of the relevant Microsoft records are likewise in Washington as are nearly all of the knowledgeable witnesses regarding the accused products as well as important prior art.

No apparent witnesses or evidence are in Delaware. Moreover, ADI is a Texas-based non-practicing entity with no connections to Delaware. Its founder and manager lives in Texas, and the named inventor on the patents-in-suit lives in New Mexico. The Federal Circuit and this Court have recognized that a plaintiff's forum choice does not justify refusing transfer where, as

here, another forum has demonstrably closer ties to the dispute, the parties, the witnesses and the evidence.

Although ADI has previously filed other cases under the asserted patents in Delaware, those cases are no longer pending and were settled and dismissed at an early stage, before any disputed claim terms were construed by the Court. Nothing that happened in those cases (in which Microsoft was not a participant) will alter what must be done to adjudicate this case, which is aimed at entirely unrelated and distinct products and a different defendant. The mere fact that ADI filed and settled other litigation against defendants that are unconnected with and dissimilar to Microsoft, does not alter the balance of transfer factors, which tilt strongly in favor of sending this case to the Western District of Washington.

## Facts

### A. ADI Is a Texas Company with No Connection to Delaware

ADI is a Texas limited liability company formed in 2011 for the sole apparent purpose of acquiring and enforcing the '502 and '094 patents. ADI's principal place of business is Round Rock, Texas, where its manager, Brent Farney, and Registered Agent Mark Dietz, also reside. [Wimsatt Decl. ¶ 2 & Ex. 1]

ADI has no discernable employees or presence in Delaware. For example, John Kesler, the named inventor of the '502 and '094 patents, lives in New Mexico, where he also lived in 1999 when he began applying for the patents. [Wimsatt Decl. ¶ 4 & Exs. 2-4]

### B. Microsoft Is a Leading Developer of Database and User Interface Technology

The '502 and '094 patents purport to disclose an improved way to create a user interface for a software application to enter data into a relational database. ['502 col. 1:17-20] Microsoft was developing relational database software, including developer tools for speeding up and simplifying the creation of screens and forms that users interact with to populate and retrieve

information from databases, long before Mr. Kesler began his work on the patents.  [Rivard Decl. ¶ 3]  In fact, Mr. Kesler based his software on Microsoft technology.  For example, the patents describe a "Utility Tool" that relies on Microsoft data access technology to extract and analyze the organization and structure of a database.  ['502 col. 17:28-40 ("The present invention uses Microsoft's Data Access Components (MDAC) to provide this layer of abstraction.")]  And Mr. Kesler's ultimately unsuccessful commercial embodiment used Microsoft Access software as the "repository" for database metadata described in the patents, as confirmed in his file history declaration.  [Wimsatt Decl. ¶ 12 & Ex. 12 at 3 (The alleged invention's repository for metadata used to generate the user interface "is itself a relational database implemented using Microsoft Access.")]

In addition to its Access software, Microsoft developed and distributed other significant prior art database and user interface technologies before Mr. Kesler did his work.  Such prior art products include (among others) "FoxPro," a data-centric programming language tool that Microsoft acquired, improved and expanded beginning in the early 1990s.  [Rivard Decl. ¶ 3]  Microsoft's early development of database and user interface technologies were precursors to the addition of the LightSwitch tool in Microsoft's Visual Studio software programming product that ADI has accused of infringing the '502 and '094 patents.  [Binder Decl. ¶¶ 4-5; Dkt. 1 ¶¶ 14, 27 (identifying LightSwitch as relevant to the alleged infringement)]

### C.  Washington Is Microsoft's Principal Software Design and Development Location

Microsoft employs more than 40,000 people in Washington and maintains its corporate headquarters there.  [Wimsatt Decl. ¶ 7 & Ex. 7]  Significantly for this case, Microsoft's principal relevant software design and development facilities are located in Redmond, Washington, just outside Seattle.  [Binder Decl. ¶ 8]  In contrast, Microsoft does not have

relevant software design and development facilities in Delaware. [Binder Decl. ¶ 8] The accused "LightSwitch" tool in Microsoft's Visual Studio programming software was designed and developed primarily in Redmond, Washington. None of the development occurred in Delaware. [Binder Decl. ¶ 8] In addition, although Microsoft has a consumer products retail store in Newark, Delaware, copies of Visual Studio and LightSwitch software are not on the shelves there. [Chou Decl. ¶ 3] Instead, Microsoft makes software development tools such as Visual Studio and LightSwitch available for purchase and download from sources such as the Microsoft on-line stores on the Internet. [Chou Decl. ¶ 3] As a result, Microsoft is unaware of any necessary and relevant connection between its retail stores (and any associated employees or documents) to the issues in this case—i.e., primarily whether Microsoft infringes the patents and whether the patents are valid.

### D. Washington Is Home to the Vast Majority of the Important Witnesses and Evidence for This Case

Several dozen engineers and professionals have participated in the creation, development, marketing, and distribution of LightSwitch. [Binder Decl. ¶ 7] The majority of the knowledgeable witnesses and documents regarding LightSwitch and Visual Studio are in the Seattle, Washington area. [Binder Decl. ¶¶ 2-4, 6-7; Rivard Decl. ¶ 2] Those Seattle-area witnesses include both present and past Microsoft employees. [Binder Decl. ¶¶ 6-7; Rivard Decl. ¶ 4]

Microsoft has been developing database and user-interface technology for decades. [Rivard Decl. ¶ 3; Glass Decl. ¶ 3] As a result, the Seattle-area is home to important historical and prior art witnesses. Some of those who participated in Microsoft's early, prior art development of database user interface technologies still reside in Washington but are no longer employed by Microsoft. [Wimsatt Decl. ¶¶ 5-6, 11, 13-14 & Exs. 5, 6, 11, 13-14; Binder Decl.

¶ 7]  Moreover, named inventors on prior art patents live in Washington but are not employed by Microsoft.  [Glass Decl. ¶¶ 3-5 ]  In contrast, Microsoft is unaware of any relevant witness or evidence in Delaware.

## Argument

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  A district court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citation omitted).  The determination proceeds in two-steps.  The Court first determines whether the action could have been brought originally in the proposed transferee forum.  *Id.* at 879; *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 600 (D. Del. 2012).  If so, the Court considers whether transfer would best serve the convenience of the parties and witnesses as well as the interests of justice.  *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 724 (D. Del. 2012).  Given the facts at issue, both steps of the inquiry indicate that venue should be transferred to the Western District of Washington.

## I.    ADI'S CASE AGAINST MICROSOFT COULD HAVE BEEN BROUGHT IN THE WESTERN DISTRICT OF WASHINGTON

Washington is Microsoft's state of incorporation and its principal place of business. Microsoft employs tens of thousands of individuals at its headquarters in the Seattle, Washington area, including dozens of engineers and other professionals who have designed, developed, maintained, marketed and licensed the software technology accused by ADI.  Microsoft is therefore subject to personal jurisdiction in the Western District of Washington and venue is proper there.  28 U.S.C. §§ 1391 & 1400(b) ("Any civil action for patent infringement may be

brought in the judicial district where the defendant resides, or where the defendant has committed acts of [alleged] infringement and has a regular and established place of business.").

It is undisputed that ADI could have filed this action in the Western District of Washington, and the Court may now transfer the case to that district.

## II. THE BALANCE OF FACTORS WEIGHS IN FAVOR OF TRANSFERRING THIS CASE TO THE WESTERN DISTRICT OF WASHINGTON

"Delaware courts are not hesitant to transfer a first-filed patent action to a more appropriate forum if warranted by the facts of the case." *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 330 (D. Del. 2009). Such willingness conforms to the Federal Circuit's precedents on transfers in circumstances such as these. *See*, *e.g.*, *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011).

Under *Jumara*, the private interest factors for the Court to consider include: (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records. *Id*. at 879. The public interest factors include: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases. *Id*. at 879-80 (citations omitted and numbering added).

The balance of factors in this case warrants transfer to the Western District of Washington because factors (2), (3), (4), (5), (6), (8), (9) and (10), weigh in favor of transfer and only factor (1) weighs slightly against it. Factors (7), (11), and (12) are neutral.

### A. The Private Interests Favor Transfer to Washington

#### 1. Factor 1—ADI has no connection to Delaware

Although the Third Circuit credits a plaintiff's choice of forum, "[w]hen a plaintiff brings its charges in a venue that is not its home forum, . . . that choice of forum is entitled to less deference." *Link_A_Media*, 662 F.3d at 1223; *see also Ithaca Ventures k.s. v. Nintendo of America Inc.*, C.A. No. 13-824-GMS, 2014 WL 4829027 (D. Del. Sept. 25, 2014); *Signal Tech, LLC v. Analog Devices, Inc.*, No. CIV-A 11-1073-RGA, 2012 WL 1134723, at *2 (D. Del. Apr. 3, 2012) ("That choice weighs strongly in the plaintiff's favor, although not as strongly as it would if the plaintiff had its principal place of business (or, indeed, any place of business) in Delaware."); *Wacoh*, 845 F. Supp. 2d at 601-02 (finding "plaintiff's choice of forum not as compelling if it is not plaintiff's 'home turf'") (citing *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 289 (D. Del. 1986)).

ADI is a Texas limited liability company with no employees, facilities, or business operations in Delaware; its choice of Delaware as a forum is therefore entitled to less deference. As a result, factor 1 weighs only slightly in its favor, and is outweighed by the remaining factors that favor transfer.

#### 2. Factor 2—Washington is home to Microsoft's software technology design and development

Microsoft seeks a transfer to the Western District of Washington because that is where the accused software was designed and developed. That district is also where the vast majority of likely knowledgeable witnesses and documents are located, and where this case could more conveniently and efficiently be investigated, prepared, and tried. Microsoft's request to transfer this particular case to the Western District makes sense; thus, factor 2 weighs in favor of transfer.

### 3. Factor 3—The underlying dispute arose primarily in Washington, not in Delaware

Although the alleged infringing acts in a patent suit often occur nationwide, "[t]he court has recognized that 'to some extent, infringement claims arise where the allegedly infringing products are designed and manufactured.'" *Ithaca Ventures*, 2014 WL 4829027, at *3 (citations omitted); *Smart Audio*, 910 F. Supp. 2d at 730 (quoting *Wacoh*, 845 F. Supp. 2d at 602); *see also In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (concluding that a party's infringement arose where its allegedly infringing activities such as research, design and development decisions occurred). In this case, the design and development efforts have been centered in Washington. None of those efforts occurred in Delaware. Accordingly, factor 3 favors transfer.

### 4. Factor 4—Party convenience favors Washington over Delaware

In evaluating the convenience of the parties, the court considers: "'(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal.'" *Smart Audio*, 910 F. Supp. 2d at 731 (citations omitted). Taken together and applied to circumstances of this case, those considerations confirm that Washington is the significantly more convenient forum.

None of the relevant Microsoft witnesses and none of the relevant Microsoft design facilities and records are located in Delaware. The Western District of Washington, in contrast, is home to Microsoft's headquarters and the place where the vast majority of its knowledgeable fact and known prior art witnesses are located. Thus, transferring venue to the Western District of Washington would substantially increase the convenience of defending this case to Microsoft.

At the same time, transferring venue to Washington would not materially inconvenience ADI.

ADI's lead trial counsel, Farney Daniels PC, has offices across the country, but not in Delaware.

ADI's place of business is in Texas and the named inventor resides in New Mexico, not in

Delaware.  "It is unreasonable to subject all parties to an inconvenient forum when a forum

exists that would significantly reduce the burden of at least one of the parties." *Ithaca Ventures*,

2014 WL 4829027, at *4 (ordering transfer from Delaware to Washington, the significantly more

convenient forum for Nintendo); s*ee In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1998 (Fed. Cir.

2009).

Because Delaware is inconvenient for both parties, and the Western District of

Washington would be significantly more convenient for Microsoft and its witnesses, factor 4

favors transfer.

### 5.    Factor 5—Witness convenience favors Washington over Delaware

First, nearly all of the engineers and professionals who designed and developed the

accused LightSwitch and Visual Studio technologies are located in the Seattle area within the

Western District of Washington.  [Binder Decl. ¶¶ 2, 6-7; Rivard Decl. ¶ 2]  Some are still

employed by Microsoft; others are not.  [Binder Decl. ¶¶ 2, 6-7; Rivard Decl. ¶ 2]  Those past

and present employees are likely to be the most important fact witnesses regarding ADI's

allegations of infringement and Microsoft's non-infringement defenses.  They will also be

important regarding damages issues focused on customer demand (or lack thereof) for the

allegedly infringing features of the accused products.  Non-employee witnesses will be within

trial subpoena power only if the case is transferred to the Western District of Washington.

Because they are former employees, Microsoft has reason to believe that they will not be able or

willing to travel to Delaware to testify.  *See Joao Control & Monitoring Sys., LLC v. Ford Motor

Co.*, No. 12-CV-1479 (GMS), 2013 WL 4496644, at *6 (D. Del. Aug. 21, 2013) (the fact that a

likely witness resides beyond the court's subpoena power and is a former employee of a party provides a reason to believe that the witness may refuse to testify).

Second, important historical and prior art witnesses are located in Washington, but not in Delaware. The asserted patents and the associated PTO file histories refer to prior art Microsoft technologies, including Microsoft Access and at least one Microsoft patent. [Wimsatt Decl. ¶¶ 3, 12 & Exs. 3, 12]. Microsoft anticipates that at least one other of its prior art technologies, called "FoxPro," will be an important issue in the case, depending on the breadth of the claim constructions that ADI advocates. Those Microsoft-developed prior art products and references were designed, invented and submitted by current and former Microsoft employees in the Seattle area. The "[e]x-employees (and, with the passage of time from now until trial, it is possible, if not probable, that some employees may move on and become former-employees) would not be subject to this Court's subpoena power, but would likely not move out-of-state and therefore would continue to be subject to the subpoena power in the [transferee venue]." *Wacoh*, 845 F. Supp. 2d at 602-03; *see also Signal Tech*, 2012 WL 1134723, at *3 (same).

To date, ADI has identified no relevant witness in Delaware. "The fact that plaintiff has not identified a single material witness who resides in Delaware rather than [the transferee venue] is telling and weighs in favor of transfer." *Teleconference*, 676 F. Supp. 2d at 333. Indeed, Delaware courts have found that "the convenience of the parties and the witnesses" are the "critical factors" in determining the appropriateness of transfer. *Boram Pharm. Co. v. Life Techs. Corp.*, No. CIV.A. 10-31, 2010 WL 2802727, at *2 (D. Del. July 14, 2010) ("In contrast, no witnesses or documents [were] identified as being in Delaware or within the subpoena power of this court.").

Factor 5 therefore weighs in favor of transfer.

### 6. Factor 6—The books and records are located in Washington

"'In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, No. CIV.A. 11-1050-GMS, 2013 WL 828220, at *6 (D. Del. Mar. 6, 2013) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)); *Smart Audio*, 910 F. Supp. 2d at 732 (same). Here, much of Microsoft's technical design information about how the accused software has been developed and works is in the Seattle area, as are Microsoft's financial and marketing records. Neither party has any discernable necessary and relevant records in Delaware. Although technological advances have made transportation of electronic evidence far less onerous, the court "cannot simply ignore the location of the relevant books and records." *Smart Audio*, 910 F. Supp. 2d at 732 (citing *Link_A_Media*, 662 F.3d at 1224).

In this case, factor 6 weighs in favor of transfer.

## B. The Public Interests Favor Transfer to Washington

### 1. Factor 7 is neutral

The enforceability of a judgment in this case favors neither Delaware nor Washington.

### 2. Factor 8—Practical considerations of trial ease, expense and expedition favor Washington

"With regard to practical considerations that could make the trial easy, expeditious or inexpensive, these strongly favor transfer because key witnesses and documents are located in [the transferee venue] and are easier to access there than in Delaware." *Teleconference*, 676 F. Supp. 2d at 335. Transferring the case to Washington will minimize travel and extended time away from family and work for Microsoft employees, non-parties, and prior art witnesses.

Moreover, a transfer will assure that third-party witnesses in Washington will be subject to subpoena power and therefore available to either ADI or Microsoft for trial.

ADI may seek to argue that the two prior lawsuits it filed in Delaware under the asserted '502 and '094 patents weighs against transfer.[1]  Although prior litigation against other defendants is sometimes relevant, the mere existence of prior cases is neither dispositive nor entitled to great weight where the transferee forum has a strong connection to the witnesses, the parties and the dispute and where the prior cases are distinct from the case to be transferred.  For example, in *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010), the Federal Circuit mandated transfer to the defendant Zimmer's home forum even though the plaintiff had another pending case before the same judge under the same patent accusing "similar technology."  The district court had denied transfer because of an "overlap of issues for claim construction" and "built-in efficiencies . . . from having related cases before the same judge."  *Id.* at 1380 (internal quotation marks omitted).  The Federal Circuit concluded that any such overlap was outweighed by the infancy of the litigation, the obvious convenience the transferee forum held for the witnesses and the defendant Zimmer, and by the factual differences between the co-pending cases that would "likely . . . result in significantly different discovery, evidence, proceedings, and trial."  *Id.* at 1382.

Here, the reasons to transfer are even more compelling than they were in *Zimmer*. Washington has a strong connection to Microsoft, the development of the accused products (and the knowledgeable witnesses about those products) and important prior art.  Delaware has no connection to either party, any witness or any other discernable necessary and relevant evidence.

---

[1] 1:13-cv-00397-GMS (Advanced Dynamic Interfaces, LLC v. Salesforce.com, Inc.); 1:12-cv-01154-GMS (Oracle Corporation and Oracle America, Inc. v. Advanced Dynamic Interfaces, LLC); 1:12-cv-00963-GMS (Advanced Dynamic Interfaces, LLC v. Aderas Inc.).

Moreover, neither of ADI's prior lawsuits under the '502 and '094 patents are now pending. Each was dismissed in its early stages. And although the court held a *Markman* hearing in one of the cases, the parties settled immediately after the hearing, obviating the need for the court to actually decide any of the disputed terms. As a result, there are no meaningful efficiencies to capture by keeping the case here. Factor 8 favors transfer.

### 3. Factor 9—Relative administrative difficulty resulting from court congestion favors transfer

As between this Court and the Western District of Washington, this Court's docket is significantly more congested. [*See* Federal Court Management Statistics, U.S. COURTS (June 2014), http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-june-2014.aspx] So far during 2014, 763 patent cases have been filed in Delaware but only 29 patent cases have been filed in the Western District of Washington. [Wimsatt Decl. ¶¶ 8-9 & Exs. 8-9] As of October 1, 2014, the District of Delaware had 1,355 open patent cases compared to only about 50 open patent cases pending in the Western District of Washington. [Wimsatt Decl. ¶¶ 8-9, 18 & Exs. 8-9, 18] On average, a judge in the Western District of Washington has 2.2 open patent cases, while this Court currently has about 400 open patent cases, the third busiest patent docket in the nation. [Wimsatt Decl. ¶¶ 10, 17 & Exs. 10, 17] The other judges of the District of Delaware have comparably crowded patent dockets. [2]

Considering the respective courts' total civil dockets also establishes that the transferee district is less congested than the District of Delaware. While the two courts have similar numbers of pending cases, Western Washington has 7 judgeships and 22 total judicial officers, versus 4 judgeships and 7 total judicial officers in Delaware. As a result, as between Western

---

[2] Judge Leonard P. Stark, Judge Sue L. Robinson, and Judge Richard G. Andrews respectively have the 4th, 5th, and 6th most patent cases filed nationwide. [Wimsatt Decl. ¶ 10 & Ex. 10]

Washington and Delaware, Delaware has about 70% more pending civil cases per active Article III judge.  [Wimsatt Decl. ¶ 19 & Ex. 19]  This disparity is increased when considering the weighted complexity of the filings in pending cases.  [Wimsatt Decl. ¶ 19 & Ex. 19]  Delaware has a weighted filing complexity per judgeship that is 266% higher than the per judge filing complexity in Western Washington.  That disparity in complexity increases to 478% when the total number of judicial officers, including senior and magistrate judges, is considered.  [Wimsatt Decl. ¶¶ 19, 15, 16 & Exs. 19, 15, 16]

Due in large part to the disproportionate number of patent cases filed in Delaware compared to other venues, the average time to judgment in patent cases in the District of Delaware is 26.3 months, while the average time to judgment in patent cases in the Western District of Washington is only 15.3 months.  [Wimsatt Decl. ¶¶ 20-21 & Exs. 20-21]  Given the comparative administrative convenience of litigating this case in the Western District of Washington, factor 9 favors transfer.

### 4. Factor 10—Compared to Delaware, Washington has a local interest in the underlying dispute

"While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (citations omitted). Delaware has no discernable local interest in this case given that neither of the parties and no witnesses or other necessary or relevant evidence are located here.  Washington on the other hand is home to Microsoft, a large number of potential witnesses and records related to the accused products and alleged infringing activities.  As between the two venues, Washington has

a stronger connection to this case. *See Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd*, 797 F. Supp. 2d 472, 486 (D. Del. 2011).

Accordingly, factor 10 weighs in favor of transfer.

### 5. Factors 11 and 12 are neutral

The public policy, factor 11, is neutral between Delaware and Washington. In addition, because this is not a diversity case, factor 12 is also neutral.

## Conclusion

For the foregoing reasons, in the interests of justice, Microsoft respectfully asks this Court to transfer this case to the Western District of Washington, the more convenient venue.

Dated: November 14, 2014

Respectfully submitted,

RICHARDS, LAYTON & FINGER

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7705
farnan@rlf.com
***Attorneys for Defendant***
***Microsoft Corporation***

OF COUNSEL:

Chad S. Campbell *(Pro Hac Vice)*
Jessica L. Everett-Garcia *(Pro Hac Vice)*
Theodore H. Wimsatt *(Pro Hac Vice)*
Perkins Coie LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
CSCampbell@perkinscoie.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 18, 2014, upon the following parties and in the manner indicated:

*Kelly E. Farnan*
Kelly E. Farnan (#4395)

123597652.10